Good afternoon. May it please the court. I'm Allison Kaditz, pro bono counsel for Petitioner Jose Ramirez. I'd like to reserve three minutes for rebuttal. I'd like to first thank the panel and opposing counsel for their understanding and my need to reschedule. I really appreciate it. Mr. Ramirez appeals the board's denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture, each of which presents a live controversy. The board erred in denying the asylum and withholding of removal claims because it relied on its own precedent that this court later held was wrongly decided, rather than conducting the requisite individualized case-specific analysis or evaluating proposed social groups. Mr. Ramirez credibly testified that he is not and never has been a gang member, yet the board denied him relief based on precedent involving gang members. That was reversible error. The board also erred by denying Mr. Ramirez's cat claim. The agency is required to address probative, potentially dispositive evidence, both so the applicant can understand the agency's decision and so that this repeatedly ignored and misconstrued Mr. Ramirez's credible testimony, as well as other unchallenged evidence in the record. The agency further erred by failing to address the aggregate risk of torture. I'll start off by addressing the jurisdictional issue raised by the court. I'll then turn to the merits and address the asylum and withholding of removal claims, and then the cat claim. As a threshold matter, Mr. Ramirez's claims were statutory withholding of removal and his holding of removal under cat aren't moot, despite his removal to El Salvador. This issue was squarely addressed by this court in Del Cid v. Marrakeen. That case is at 823 F 3rd 933. In Del Cid, the despite his removal, because there was the possibility that he could return to the United States under ICE Policy Directive 11061.1, which I'll call the return directive. The return directive provides that ICE, absent extraordinary circumstances, will bring a removed non-citizen back into the country, into the United States, if his presence is required for purposes of, for purposes of the remand proceedings, or if he ultimately prevails on remand before the agency. As of this morning, the return directive was posted and described on ICE's website. This court has consistently applied Del Cid for their proposition that withholding, withholding claims are not mooted by the removal of the petitioner pending appeal. And just as Del Cid's petition was not moot, we have a live controversy here. There's the possibility that ICE would parole Mr. Ramirez back to the United States and Del Cid instructs that that possibility is sufficient for purposes of this court establishing its jurisdiction. On the merits, this court should send the asylum and withholding of removal claims back to the agency for the simple reason that the board denied those claims based on matter of EAG, a decision that was binding on the board at the time, but which this court has since held was wrongly decided. In EAG, the board conflated actual gang members and individuals mistakenly believed to be gang members. This court in Vasquez Rodriguez explained that EAG's reasoning was legally flawed because the policy rationale for categorically disqualifying actual gang members has no application in the context of imputed gang members, and that the board therefore erred by failing to conduct an evidence-based, case-specific analysis. That's all. I have a question on that. Of course, EAG is cited, I think, just once in the BIA decision. And then the BIA goes on, although not with great flourish, to talk about a harm issue. If we were to assume that the board erred because of this question of EAG and the conflation, could we assume that there is a recognized, particularly social group here, without deciding it, and then go on to the harm question, and therefore potentially avoid a remand? Your Honor, just for clarification, when you say move on to the harm question, do you mean the question of past persecution? Or... No, I don't think so, Your Honor. Because the question of past persecution, which I think was also erroneous, can't completely resolve this claim. Even assuming Mr. Ramirez failed to move on to the harm question. And here, the agency stopped at that initial step of saying he did not establish that he belongs to a particular social group. So, when we look at the PSG analysis, is it your position that we can look at the BIA decision and the IJ's decision, or only the BIA's decision? I think here, I think the court should just look at the BIA decision, which relied dispositively on matter of EAG. But even if the court also looks at the IJ decision, that doesn't help the agency any, because at most, the IJ cited Arteaga, which Vasquez Rodriguez explains is inapplicable in this situation, because it involves actual gang members. What needed to happen before the IJ, and what this court has explained in cases like Puri or Bach v. Holder, is that there needs to be an individualized case-specific analysis that involves the application of a three-part test for assessing proposed social groups to the record in that case. As I look at the IJ's decision, the immigration judge does go through a more detailed analysis than the BIA, and talks about the specific requirements for a particular social group, including particularity and immutability and those other requirements. And so, if I can look at the immigration judge's decision, I'm struggling with with the matter of EAG argument that you're making, because the immigration judge does not rely on matter of EAG. I think the court should just look at the BIA decision, which has a different analysis. The analysis is different. The board relied on matter of EAG, and we know that was legal error, and that should be enough. But just to look again at the IJ decision, it's not enough to simply say what the legal standard is here, that there are these three requirements. If you look at Puri or Bach, for example, and agency decisions like matter of MEVG, it's a really involved factual analysis where those factors are applied to the testimony, to country conditions reports, looking at how this proposed group is viewed in El Salvador. They look at the press accounts. They look at other evidence. That simply didn't happen here. So, whichever way the court frames it, it's not enough. That analysis simply didn't happen here, and it makes sense because at the time, the board had matter of EAG. But to return to your question, Judge Forrest, I think the court should focus, is limited to the board's decision. Just one last question on this line. How can conclusion given the very last sentence of the BIA's decision, which is where it said, for the foregoing reasons and those articulated by the immigration judge, we affirm? Doesn't that sentence tell us that the BIA is incorporating the immigration judge's reasoning? I mean, even if the immigration judge's reasoning is incorporated, the board still took a different turn here and relied expressly on matter of EAG. Again, I don't think the IJ, regardless, engaged in the requisite fact-finding here. But I don't think that sentence alone is sufficient. Counsel, does your cat argument at all turn, have any relation to the BIA's citation of EAG? No, Your Honor. Your cat claim stands independent of your alleged error on the EAG problem. Correct. And I'll turn to the cat claim unless the court has any additional questions on asylum and withholding of removal. I'd like to focus on three key errors that the agency made in denying the cat claim. The failure to give reason consideration to probative evidence, the failure to assess aggregate risk, and the relocation finding, which lacks substantial evidence. First, the agency ignored and misconstrued probative and potentially dispositive evidence in the record. We outlined various examples of this in the briefing, but I'd like to focus on evidence of tattoos. The unchallenged testimony and other evidence in the record is that Mr. Ramirez has a tattoo on his leg that says ES, which begot to signify El Salvador, but will most likely be viewed in El Salvador as referring to the 18th Street Gang. That law enforcement and gang members routinely force people in El Salvador to remove their clothing in search of gang tattoos, and that people who are suspected of being gang members are targeted and are subject to torture. At AR-164, for example, the key country conditions report in this case identifies as a primary human rights abuse that unlawful killings, it identifies unlawful killings of suspected gang members by security forces. The IJ, rather than addressing that evidence or rebutting it, simply writes at AR-71 that there was no showing that law enforcement would target him or that he'd be situated differently from anyone else with the tattoo. The IJ doesn't say why. The IJ was required to address probative evidence, provide a reasoned explanation, and to the extent that she did not agree or to the testimony was ambiguous or speculative, she was required to notify him and give him the opportunity to corroborate that testimony. That proposition comes from Red Bee Holder. None of that happened here, and for that reason, a remand is required. One thing, I do look on AR-66 and there's an acknowledgment and recitation about the tattoos, the being in prison in the United States, the ES and the map of El Salvador and what the gangs might do in terms of taking off your clothes, so it seemed that the immigration judge laid out all this information with respect to the gangs and then came to a conclusion. What's the legal error there? The legal error, at a minimum, is we don't know how the IJ, we know the IJ says that he credibly testified that he believes he would be identified based on his tattoos as a gang member, and the IJ says that law enforcement won't view him as a gang member, but we don't know why. There's no explanation there as to how the IJ got from A to B. An additional legal error is that the IJ, in her decision, focuses on law enforcement but doesn't distinguish between law enforcement and gang members. Those are two different theories of harm, and that brings me to the next error. Counsel, before you go there, what in the record supports your client's claim that he would be tortured as opposed to persecuted because of his tattoos? Let's assume that I'm persuaded by your argument about EAG, that they have an obligation to consider that, and that he might be persecuted on account of and the imputation of gang membership because of the tattoos, but persecution falls well short of torture. So what is the best evidence that he will be tortured by somebody because of the tattoos? Where's that connection? Where's the nexus there? I would point the court to evidence that in El Salvador, individuals who are suspected to be gang members are killed by both. Yeah, but being killed is not torture. Those are very different things. Killing, of course, is a horrible thing to have happen, but it doesn't necessarily constitute torture. I disagree, Your Honor. I think I don't have the case on hand, but my understanding is that in this circuit, killing constitutes torture. But there is additionally evidence in the record of the types of harm that suspected gang members are subject to. I think there's a mention of dismemberment and other forms of harm, but ultimately, the question of whether Mr. Ramirez suffered torture is a factual finding that the agency needs to make. The IJ decision says that Mr. Ramirez did not suffer torture, but does not explain why that is. We can surmise that that's because she found there was no persecution. But that's pretty obvious that he hasn't suffered torture because he hasn't suffered persecution. The problem is he got the tattoos in the United States. He's only recently in El Salvador, and you don't have any evidence about what he's currently suffering. So this is about future behavior of gangs or Salvadoran police. So where's the evidence that suggests that the gangs or the police will acquiesce in the torturing of people suspected to be gang members? I have a few responses, Judge Bivey. First, I think it is clear on this record that Mr. Ramirez was persecuted in El Salvador. It's discussed in the briefing, but the IJ reached a contrary conclusion, which... Yeah, but I think you may be missing something. Right now, I think the principal evidence you've got are the tattoos. He was not tattooed when he lived in El Salvador as a child. The tattoos were acquired in the United States. Right. And so I thought that the tattoos were your principal evidence of how he would be mistreated once he was returned to El Salvador. It's the tattoos, but not simply the tattoos. It's the tattoos combined with his status as a deportee with a criminal record, in addition to the fact that he refused to join the gang as a boy in El Salvador. And that brings us to the question of aggregate harm. It's well settled in this circuit that the agency commits reversible error by failing to address aggregate harm. In this case, the question is whether Mr. Ramirez is more likely than not to be tortured by law enforcement or gangs because of his tattoos, his status as a deportee with a criminal record. Counsel, you're over time. Judge Bybee, do you have any further questions? I don't have any further questions. All right. Okay. We'll give you a short rebuttal, given that we took you over. All right. Counsel for the government. Good afternoon. May it please the court, my name is Sharon Clay for the Attorney General. In response to your inquiry about mootness, I agree with opposing counsel that the case, Del Cid Marroquin, is illustrative of this fact. Our office is of the consensus that the petitions withholding claim is not moot based on ISIS policy to facilitate the return of aliens. I do want to say thank you for that acknowledgement, because it's been unclear and argued, as you know, in various cases. So it is helpful to have that on the record. Yeah, I had to consult people in my office. Oh, thank you. Okay. With regard to the appeal. I want to ask a follow-up question on mootness. I mean, irrespective of the government's position on that, we have an obligation to satisfy ourselves that jurisdiction still exists. And so can you just, what are the collateral consequences that this petitioner is still facing? Well, with regard to this particular petitioner, his collateral consequences are the length of time that he would be denied being able to come into the country. If he's not able to... My apologies. It's very confusing to me as well. But my understanding is that petitioner, unless, as long as there is some ability for there to be relief granted for him, and the travel policy does that, then we can't make the argument that it's not moot. Now, one of the things that crossed my mind was that in maybe cases where the petitioner is permanently barred from the United States, that maybe that that would make the issue moot. One of the, a couple of the cases that I came across talked about the terrorist bar to the United States, which there were probably no basis for facilitating his return by any stretch of the imagination. So I think in this particular case, because the court never actually statutorily precluded him from relief for withholding a removal, there's always that possibility that he may actually in the future be able to seek relief, even if it's 10 years from now or 20 Well, I assume... Had it been different, excuse me? The difference is, of course, the case you're referring to about power of the holder was a terrorist bar, and there may be crimes of moral turpitude, but then there's some leeway. Correct. I think the board just never made that finding. He might fall in that category. Is that right? Correct. It could, but they didn't make that factual finding in the case. So it leaves us there's that possibility that he could return to the United States. No guarantees. Turning to the appeal, our argument is that the agency did not err in denying the petitioner's applications for asylum and withholding a removal because his fear of persecution based on gang recruitment, extortion, or being wrongly perceived as a gang member based on his tattoos do not Contrary to what opposing counsel has said, the immigration judge did set forth the requirements for asylum claims, including social group claims, and determined that petitioner had not presented a group claim that met the requirements under the INA. The INA specifically stated, and I quote, the group has not been defined or delineated with particularity. There is not an immutable characteristic and there's no showing that such a group is perceived as such in the country of El Salvador. This statement was made on This petitioner was pro se in front of the agency, and he never actually articulated any particular social group is my understanding of the record. So what is the immigration judge's obligation in that context to define a PSG for him? But the IJ's responsibility is to develop the record. So I guess in essence, by actually evaluating his claim based on his tattoos and extortion, he undertook his duty under the circumstances that petitioner was pro se at the time. The other thing, too, is that the board agreed, and making a distinction between the board and IJ's decision, in this particular case, the board actually stated that they made a clear error determination. They didn't do a full analysis on the claim, and they actually relied on certain portions of the record to actually substantiate its agreement with the immigration judge. If you note the site, they specifically noted the 2017 report on human rights in El Salvador. They refer specifically to pages one through eight of the IJ's decision, and the board specifically noted pages 60 through 68 in the transcript. So it's cited to these three portions of the record to substantiate or claim or agree that the immigration judge did not err. And the board agreed with that decision, and petitioner has not actually challenged that finding, the finding of lack of particularity and the lack of social distinction. Well, I guess I read it differently. I thought that's the heart of the matter, is whether there was sufficient addressing by either the IJ or the BIA of this particular social group. And with the citation of a matter of EAG requiring a certain level of particularity, that the relief would be to send it back for determination with the particularity and the specific case. So you can correct me if I've misunderstood it as you perceive it. No, I don't. No, I don't. I too had some issues with the case, whatever, but I do feel like it explained enough in terms of what it expected and what it didn't actually find in the decision. But as guidance for this particular case, the court could look to Gutierrez v. Garland and Aguilar v. Garland. They're both 2023 cases, and they both considered perceived or suspected gang members. And they both came down on the side that those particular groups of suspected or perceived gang members lacked social distinction and particularity. What we have is basically a one-liner that says, well, we have two lines. We don't discern any clear error, and Ramirez failed to establish past persecution or a well-founded fear of further persecution. And we have the citations that you've got. And then for the legal standard, we have four cases cited, one of which is EAG. So one of which the BIA relied on is one that we have now specifically disapproved. It was disapproved after the BIA made its decision here. So I'm not faulting them for not anticipating that. But when the BIA has cited that, its own decision as a justification, don't we have an obligation to send this back to the BIA and let them do this under the right standard? Well, I think it also did it alternatively under the other standard. If the string cites, if you want to take them in their totality, it doesn't just also cite the EAG. It also cites the MEVG. And under MEVG, if you notice that last line, it says clarified by the two board decisions that outline the requirement for particular social groups having to have immutable characteristics, as well as particularity and social distinction. And so I think a fair reading of the board's decision is that they did consider the... Counsel, if there was a parenthetical after a matter of MEVG, you might have a strong argument, but this looks like somebody just shepherdized it. But that's the subsequent case history to EAG. And it's not really the clarification they're citing it for. Yes. That is true. And I wish they did have a parenthetical under EVG. But what I would say is that EVG doesn't subscribe to the EAG formulation. Then why didn't they just cite MEVG and leave EAG out of it? We often find that, and isn't the easiest solution in that kind of a case, because we wish they had, or we wish we knew what they meant. But if we don't know what they meant, isn't the easiest solution and the fairest, just send it back and then the issue's on the table after we've now undermined the EAG decision, which they didn't have the benefit of, admittedly, when this was done. Correct. But there might be the issue of futility. I mean, we could send it back and they clarify it for cleanness and put the parenthetical in, but the chances are they'll probably render the same determination. Just like the two cases that I just recently cited that found that the perceived suspected gang members lacked social distinction and particularity. And I'm just making a futility argument, not that they couldn't go back and clean it up, but I'm just saying that the likelihood that it will change the board's determination here is probably very remote. The futility argument is interesting, but the Chenery Principle is pretty powerful, and the government is always in here reminding us that the board gets the first shot at this and we don't get to second guess them or say, well, there's another ground floor on which they could have decided this. Well, I guess the standard of review, too, may be something to consider in this particular case in the sense that the board doesn't necessarily have to give a full analysis on a immigration claim. A board can essentially just affirm without opinion the immigration judge's determination. In those cases... This goes back to Judge Forrest's question to opposing counsel about the tagline, and for other reasons described by the IJ. That's a little bit unusual. Usually, we get that statement up front by the BIA that says, we affirm on the grounds decided by the IJ, and then they may add something to that. But they usually tell us that up front instead of just tagging it on at the end, and it just looks like it's a little bit of a... You might have missed here. I'm not sure what to do with that, because it feels like a little bit of an afterthought. Yeah. There's quite a bit of that that happens sometimes. Counsel, I want to follow up on that. Is it the government's position that we should just look at the BIA's decision here, or do you think the BIA incorporated the immigration judge's decision? I believe that the BIA incorporated the immigration judge's decision. It specifically highlighted the specific portions of the record that it was relying on, including the immigration judge's decision, when it produced its string sites that actually, especially I think the string sites were there to just provide support for what the immigration judge did. I don't think the board engaged in any kind of real analysis, any kind of de novo review on the question of cognizability. They simply just found no clear error with immigration judge's determination. And I don't think that... Our case law clearly establishes that if the BIA adopts the immigration judge's reasoning and just adds some additional reasoning of its own, we look at both decisions. Are you aware of any authority to indicate that if the BIA purports to incorporate the immigration judge's decision as the last line of its decision, that somehow the rule is different? Not to my knowledge. My understanding is that we would review both decisions because the board didn't give us much information. The immigration judge's references give us a glimpse into what the board was thinking when it made its decision. And so the IAJ's decision is our best estimate or our best understanding about what the board meant because of its lack of de novo analysis. Before we run out of time, I have a question about the Catt claim for the government. It seems to me one of the theories that the petitioner had in this case for his Catt claim was that he would be tortured by the government because there is a particular law in El Salvador that people who are coming back, who are being deported back to El Salvador, who have criminal records, have been sent to prison. So there's evidence in the record that was presented on that particular law and articles that substantiate that that particular law exists. And it's also in the record that this petitioner was classified as a gang member in U.S. prisons. So I'm wondering what in the either agency decision tells us that it considered that argument and that evidence? The, well, it's not explicitly stated, but as indicated by the immigration judge, she highlighted or he highlighted essentially every facet of the case that they considered in evaluating the Catt claim. In the court's review, like I said, the immigration judge listed a whole laundry list of items that she actually considered and actually kept referring to Exhibit 6 of the record and Exhibit 5. And what you find at Exhibit 6 is the most recent country condition evidence that's presented in the record. Some of the evidence in the record is not necessarily reliable because it's anecdotal or it's outdated. Some of it is to where he actually lives. And some of it is actually centric. You're specifically asking about evidence of a law in El Salvador that applies in the whole country that creates this, what is called pipeline to prison. That laundry list of things. And definitely there's reference to tattoos and gang activity and government corruption. I don't see any reference to this idea of this sort of pipeline to prison and what impact that's going to have on him as a returning deportee. Well, actually, even though the board didn't consider the new decree. That wasn't new. That wasn't new. In the original record in front of the immigration judge, there were several articles and discussions about that law. That's true. But in the Decree 717, what it does is it allows El Salvador to actually interview people that are returning from the United States to determine the risk of, I guess, gang activity. At best, what I can tell from the Decree 717, from the article that describes the two prison, the immigration judge, I mean, the maximum that a person was supposed to get is detention. But for a check-in, so they required a check-in. If you don't do the check-in, they actually can incarcerate you. And so there does appear to be arguably some human rights kind of violations, but the human rights violation does not raise rise to the level of torture. That reasoning makes a lot of sense to me. My problem is I don't see that from the agency. I mean, that's your argument, but I don't see that the agency has made that argument anywhere. Well, I think arguably it's implicit in the fact that it addresses the prison conditions in El Salvador. He doesn't argue necessarily that he's going to be in prison, so to speak. He's arguing that he's going to be tortured. But the immigration judge took great pains to describe the fact that the overcrowding conditions are being managed. And so if he did find himself in jail, he still cannot say that he'll be tortured in El Salvador. And I understand, like I said, again, it's not an explicit statement, but I think a fair reading of the immigration judge's decision, one could extrapolate that she was anticipating that incarceration was part of the claim based on that decree. All right. I've taken you over. Do my colleagues have any further questions for the government? No. No. All right. Thank you for your argument. Ms. Kadich, we'll give you one more minute for rebuttal. Okay. A few quick points. Matter of MEVG does not clarify matter of EAG in any way that's relevant here. I think at footnote 12 or 13, it actually affirms the reasoning that this court rejected in Vasquez Rodriguez. The notion that futility is an appropriate ground for not remanding here directly contradicts this court's reasoning in Vasquez Rodriguez, which explains that a remand is required. I'd note that the notion that the IJ conducted the requisite fact-finding here cannot be squared with this court's decision in pure BOC or agency precedent like matter of MEVG. There's simply no analysis as to the proposed social group at issue. Turning lastly to the point raised by Judge Forrest, it's correct that decree 717 was not addressed, that it is a key piece of probative evidence that under this court's case law, because it wasn't addressed, would require a remand. In conclusion, the court should grant Mr. Ramirez's petition and remand to the agency. Thank you. All right. Thank you, counsel, for your helpful argument in this case. And in particular, on behalf of the court, I want to thank Ms. Cadiz and her firm for agreeing to take representation of Mr. Ramirez's pro bono in this case. We appreciate your able representation and assistance to the court. All right.
judges: McKEOWN, BYBEE, FORREST